UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DATA MANUFACTURING, INC.,       )
                                )
            Plaintiff,          )
                                )
      vs.                       )     No. 4:07-CV-1456 (CEJ)
                                )
UNITED PARCEL SERVICE, INC.     )
                                )
            Defendant.          )

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff opposes the motion and the issues are fully briefed.

Plaintiff Data Manufacturing, Inc. (DMI), brings this action against defendant United Parcel Service, Inc. (UPS), seeking damages for allegedly wrongful "re-billing charges" assessed by defendant from March 2005 through August 2006. In its five-count amended complaint, plaintiff asserts claims of breach of contract, fraudulent misrepresentation, money had and received, and negligent misrepresentation. In addition to monetary relief, plaintiff seeks a declaration that the re-billing charges are void and against public policy.

Defendant removed this action from the Circuit Court of St. Louis County, Missouri, invoking jurisdiction under both 28 U.S.C. §1441 and 28 U.S.C. §1332. Defendant filed an answer to the original complaint and subsequently filed the instant motion to dismiss. Defendant contends that plaintiff's claims are pre-empted

by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA").  See  49 U.S.C. §14501(c)(1).

## I. Background

Plaintiff DMI manufactures debit and gift cards for various retailers on behalf of its customers, including First Data Corporation.  Among First Data's requirements was that defendant UPS be used for the shipment of any gift cards that plaintiff manufactured for First Data.  First Data agreed to pay all charges in connection with the shipment of these cards.

Plaintiff had an open account with defendant and was billed on a weekly basis.  Originally, DMI provided its account number to UPS when shipping the gift cards.  UPS would bill plaintiff weekly and plaintiff would then be reimbursed by First Data for the amount attributable to shipping First Data's gift cards.  In March 2005, however, plaintiff began to ship the gift cards using First Data's account number.  Thereafter, the shipping charges were billed directly to First Data.

At some point, First Data began to reject the UPS third-party billings.  First Data's rejected billings were then charged to plaintiff's account.  Plaintiff alleges that it was not aware that First Data was rejecting the charges.  Thus, when plaintiff received its statement from defendant each week, plaintiff was not aware that it included charges for the shipments made on behalf of First Data.  Plaintiff contends that the statements received from defendant did not include specific shipment information, but instead summarized hundreds of shipments.

Plaintiff alleges that it learned that defendant was also adding a $10.00 charge for each billing that was rejected by First Data and for which defendant then re-billed to plaintiff's account. Plaintiff contends that this "re-billing charge" actually exceeded the total cost of the shipment itself. In the weekly billings, defendant included an aggregation of the $10.00 charges within a summary category identified as "chargebacks". The chargebacks category also included various other types of charges and did not specifically disclose that it included any re-billing charges.

Plaintiff states that it did not discover that defendant had been adding these re-billing charges to its account until August 2006. According to plaintiff, from the period of March 26, 2005 through August 11, 2006, defendant billed a total of $366,910 in re-billing charges. For that same time period, the actual shipping charges amounted to only $297,426. Plaintiff contends that defendant incurred no significant expense from re-billing the shipment charges to plaintiff's account. Plaintiff argues that the re-billing charge is void and unenforceable as a penalty.

**II. Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (May 21, 2007) citing Swierkiewicz v. Sorema N.A.,

534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

### III. Discussion

Defendant argues that all of plaintiff's claims should be dismissed because they are expressly pre-empted under the FAAAA. See 49 U.S.C. §14501(c)(1). Alternatively, defendant argues that plaintiff's claims for charges prior to January 18, 2006 must be dismissed as time barred pursuant to 49 U.S.C. §14705(b), which requires any civil action to recover overcharges against a motor carrier to be filed within eighteen months after the claim accrues. Finally, defendant argues that plaintiff failed to satisfy contractual conditions precedent to plaintiff's claims.

The Court begins with defendants contention that plaintiff's claims are pre-empted under the FAAAA. "In the FAA Authorization

-4-

Act of 1994, Congress sought to equalize competition between air carriers and motor carriers in the transportation of property by uniformly pre-empting state economic regulation of their activities, but not state safety regulation." Tow Operators Working to Protect Their Right to Operate on the Streets of Kansas City v. City of Kansas City, 338 F.3d 873, 874 (8th Cir. 2003). The relevant pre-emption provision can be found in 49 U.S.C. §14501(c)(1), which states:

> **(c) Motor Carriers of property.**--
>
> **(1) General rule.**--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law <u>related to a price, route, or service of any motor carrier</u>...or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. §14501(c)(1)(emphasis added).

Thus, there are two prerequisites to a finding of pre-emption: (1) plaintiff's claim must derive from the enactment or enforcement of state law; and (2) plaintiff's claim must relate to defendant's prices, routes, or services. If plaintiff's claims satisfy both of these conditions, then they are pre-empted and must be dismissed.

The Court first examines whether plaintiff's claims derive from the enactment or enforcement of a state law. The United States Supreme Court has held that ordinary breach of contract claims derive directly from the parties' own agreement and not from the enactment or enforcement of state law. See American Airlines,

Inc. v. Wolens, 513 U.S. 219, 232-33 (1995).[1]  Indeed, "terms and conditions [carriers] offer and [customers] accept are privately ordered obligations and thus do not amount to a State's enactment or enforcement of any law."  Id. at 228-29.  "This distinction between what the State dictates and what the [carrier] itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.  Id. at 232-33. Therefore, under Wolens, if plaintiff's breach of contract claim is based solely on the agreement between the parties and does not require "enlargement or enhancement based on state laws or policies", then it is not pre-empted.

Plaintiff's breach of contract claim is found in Count I of the amended complaint.  Plaintiff alleges that "[i]mplicit in [defendant's] contract with [plaintiff] was a covenant that [defendant] would not impose unlawful charges such as the penalty in the form of the $10 rebilling charge [defendant] included in its bills to [plaintiff]."  Plaintiff contends that defendant breached its contract by imposing these unlawful penalties, which plaintiff alleges were "void as against public policy, and...legally unenforceable."

---

[1] Wolens involved a pre-emption clause in the Airline Deregulation Act of 1978 ("ADA").  However, the pre-emption clauses in the ADA and FAAAA are identical in scope.  See Rowe v. New Hampshire Motor Transport Ass'n, ___ S.Ct. ___, 2008 WL 440686 (Feb. 20, 2008).

The Court finds that plaintiff's breach of contract claim derives from the enactment or enforcement of state law and not solely from the parties' own undertaking. Plaintiff's claim alleges that the charges: (1) are unlawful; (2) constitute a penalty; and (3) are void as against public policy and unenforceable. The determination of whether such charges are unlawful or against public policy depends not on any term of the parties' contract, but instead on the laws and public policies of the state of Missouri. There is no theory of recovery articulated in Count I that does not require "enhancement or enlargement based on state laws or policies."

The remainder of plaintiff's claims are also derived from the enactment or enforcement of state law. Count II states a claim for fraudulent misrepresentation while Count III and Count IV state claims for money had and received and fraudulent misrepresentation, respectively. These state-law tort claims do not fall within the Wolens exception. Finally, Count V of the amended complaint seeks contractual declaratory relief. Plaintiff asks that the Court declare the charges "unreasonable, unconscionable, and void as a matter of public policy and law." This claim is clearly based on state public policy external to the parties' contract. All of plaintiff's claims derive from the enactment or enforcement of state law.

The Court now turns to whether those claims are "related to a price, route, or service of a motor carrier". 49 U.S.C. §14501(c)(1). As an initial matter, the Court is satisfied that

defendant United Parcel Service is a "motor carrier" for purposes of the FAAAA.[2] Thus, the question becomes whether plaintiff's claims "relate to" defendant's prices, routes, or services.

The United States Supreme Court has broadly interpreted the phrase "relating to" as encompassing all state laws having any connection with or reference to the carrier's rates, routes, or services. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992). Although Morales focused on the pre-emption provision of the ADA, the Supreme Court recently applied its holding to an interpretation of the FAAAA's pre-emption provision as well. See Rowe, 2008 WL 440686 at *4. The Rowe Court noted that the FAAAA's pre-emption clause must be interpreted broadly. Id. A claim may be pre-empted "even if a state law's effect on rates, routes, or services is only indirect." Id. However, the Court indicated that federal law might not pre-empt claims which have only a "tenuous, remote, or peripheral" affect on rates, routes, or services. Morales, 504 U.S. at 390.

Given the broad interpretation afforded to the FAAAA's pre-emption clause, the Court finds that all of plaintiff's claims

---

[2] Plaintiff argues that, because the amended complaint does not allege that defendant is a "motor carrier" within the meaning of the FAAAA, the Court cannot consider defendant a motor carrier for purposes of this motion to dismiss. This argument is without merit. Plaintiff does allege that defendant shipped plaintiff's gift cards to customers in exchange for compensation, and such a description is legally sufficient to include defendant in the FAAAA's definition of a "motor carrier". Further, numerous courts have recognized defendant's status as a "motor carrier". See United Parcel Service, Inc. v. Flores-Galarza, 318 F.3d 323, 324 (1st Cir. 2003); Cole v. City of Dallas, 314 F.3d 730, 735 (5th Cir. 2002).

"relate to" defendant's pricing and are pre-empted. Each of the claims are premised on the alleged fact that defendant improperly charged plaintiff a ten dollar fee on numerous occasions. These charges, whether proper or not, certainly have more than a "tenuous" or "remote" connection to defendant's pricing. The Court finds that all of plaintiff's claims fall within the broad pre-emption clause of the FAAAA.

Plaintiff contends that these claims are not pre-empted because the motor carrier statute contains a saving clause stating that the remedies contained in it are in addition to "remedies existing under law or common law". 49 U.S.C. §§13103, 40120(c). The Supreme Court has rejected this argument, noting that "[a] general 'remedies' saving clause cannot be allowed to supercede the specific substantive pre-emption provision..." Morales, 504 U.S. at 385.

Plaintiff also argues that, even if the FAAAA pre-empted state common law claims, it does not pre-empt claims made pursuant to federal common law. Plaintiff alleges that his claims are brought pursuant to both state and federal common law.

It has long been established that "[t]here is no federal general common law." Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Instead, federal common law causes of action can be established only when "necessary to protect uniquely federal interests." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 426 (1964). "[T]he ability of a plaintiff to state a federal common law cause of action depends on the existence of a 'gap' in the text

of that legislation that allows for the creation of the federal common law remedy sought by the plaintiff." <u>Cooperative Ben. Adm'rs, Inc. v. Ogden</u>, 367 F.3d 323, 329 (5th Cir. 2004). Plaintiff's claims are simply not based on federal common law, and its attempt to avoid pre-emption on that basis is without merit.

**IV. <u>Conclusion</u>**

Plaintiff's state law claims are pre-empted by federal law. <u>See</u> 49 U.S.C. §14501(c)(1). Therefore, the amended complaint must be dismissed for failure to state a claim upon which relief can be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#17] is **granted**.

**IT IS FURTHER ORDERED** that all other pending motions are **denied as moot**.

A separate order of dismissal will accompany this Memorandum and Order.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 5th day of March, 2008.