UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DATA MANUFACTURING, INC., | ) |
| Plaintiff, | ) |
| vs. | ) No. 4:07-CV-1456 (CEJ) |
| UNITED PARCEL SERVICE, INC. | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss following remand from the United States Court of Appeals for the Eighth Circuit. Plaintiff opposes the motion and the issues are fully briefed.

## I. Background

Plaintiff Data Manufacturing, Inc. manufactures debit and gift cards for various retailers. Plaintiff used defendant United Parcel Service, Inc. to ship the gift cards to its customers. Plaintiff also used defendant's third-party billing service to have the charges for these shipments billed directly to plaintiff's customers. At some point unknown to plaintiff, customers began to reject the third-party billings. Defendant subsequently billed the charges to plaintiff's account. In addition, defendant also added a ten-dollar "re-billing fee" to plaintiff's account every time the third-party billing was rejected by plaintiff's customers.[1] Plaintiff was unaware that it was being charged these fees, and contends that it did not agree to them.

Plaintiff filed this action, claiming that the re-billing charges violated the parties' contract and were void pursuant to public policy concerns. On March 5, 2008, the

---

[1] Plaintiff was charged total "re-billing fees" in the amount of $366,910.00, even though the charge for the shipments during that period was only $297,425.74.

Court dismissed the complaint, finding that all of plaintiff's claims were pre-empted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). See 49 U.S.C. § 14501(c)(1). The court of appeals affirmed the dismissal as to all but one of plaintiff's claims: the claim in Count I in which plaintiff asserts that it did not agree to pay the re-billing charges. See Data Mfg., Inc. v. United Parcel Service, Inc., 557 F.3d 849 (8th Cir. 2009). The court of appeals noted that, on remand, plaintiff could not "argue that the fee is too unconscionably high, a penalty, or void," as such arguments would be pre-empted by the FAAAA. Id. at 854. Thus, the sole remaining issue is whether plaintiff agreed to these charges in its contract with defendant. The court of appeals noted that the "[a]djudication of this claim will likely be a matter of simply entering the contract documents into the record before the district court." Id.

Following remand, defendant filed the instant motion to dismiss, arguing that the contracts between the parties authorized the imposition of the re-billing fees upon plaintiff's account. Plaintiff insists that defendant failed to disclose the fees and that it never agreed to them. The parties agree that, because the issue before the Court requires an examination of the relevant contracts, this motion to dismiss may be converted into a motion for summary judgment should the Court find that it must consider matters outside of the pleadings. See Fed. R. Civ. P. 12(d).

II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule

12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

As an initial matter, the Court believes that it may consider the relevant contracts in this case without converting this motion into one for summary judgment. "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." Stahl v. U.S. Dept. of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003).[2] To resolve the narrow issue before the Court, it is unnecessary to look beyond the language in the contract documents. Therefore, the Court will treat this motion as a motion to dismiss.

On November 25, 2002, plaintiff and defendant entered into a service agreement where defendant agreed to provide delivery services for plaintiff and plaintiff agreed to pay for all such shipments. That agreement, along with "all UPS

---

[2]In this case, it makes little difference whether the motion is treated as a motion to dismiss or as a motion for summary judgment. The parties have consented to either treatment, and the briefs filed contained all of the necessary components of a motion for summary judgment. Further, the result reached here would be the same even if the Court were analyzing motion under the summary judgment standard.

Service Guides in effect at the time of shipment contain the basic terms" of the contract between the parties. (Plaintiff's Exhibit 1, page 1).

The 2005 and 2006 "Rate and Service Guides", which were in effect during the relevant time period, each contain the following provision explaining the third-party billing option which plaintiff employed:

> UPS accepts shipments for…Third-Party billing provided the consignee or third party has a valid UPS account number and has agreed to accept the charges. A processing fee, set forth in the UPS Rates applicable to the shipment in effect at the time of shipping, will be charged for a missing or invalid account number when…Third-Party billing has been selected. (Defendant's Exhibit B, p. 145; Exhibit C, p. 142).

The Service Guides explain that such a fee applies when the third-party being billed refuses or fails to pay the shipping charges. (Id.).

A second portion of the Service Guides also states that "[a] $10 charge per package will be assessed for shipments with a missing or invalid account number." (Defendant's Exhibit B, p. 125; Exhibit C, p. 121). This charge applies when a "third party…fails to pay the shipping charges." (Id.).

Thus, the "Rate and Service Guides" for the applicable time period clearly allow for the ten-dollar fees imposed upon plaintiff. However, even though the initial contract signed by plaintiff references and incorporates the terms of "all UPS Service Guides," plaintiff still insists that it is not bound by the fees described in the "Rate and Service Guides". First, plaintiff notes that the charges were listed on page 147 of a 157-page document, thus suggesting that they were not prominently displayed. Second, plaintiff claims that the "Rate and Service Guides" were not provided to it, and that it was not given the address for the website on which the guides were posted. Finally, plaintiff claims that, because parties' agreement refers to the "UPS Service Guides," it is unclear whether that reference includes the "UPS Rate and Service Guides." Plaintiff argues that the Court must consider all of these factors when

–4–

applying the reasonable communicativeness test to determine whether defendant gave plaintiff reasonable notice of the contractual provision.

The Court is not persuaded that application of the reasonable communicativeness test is appropriate in this situation. The cases cited by plaintiff, where the reasonable communicativeness test was applied, involve contractual provisions limiting the ability of passengers or customers to hold carriers liable for injuries or damages sustained during carriage. See Coleman v. Norwegian Cruise Lines, 753 F.Supp. 1490 (W.D. Mo. 1991)(applying reasonable communicativeness test to determine whether one year statute of limitation contained on the cruise ticket had been reasonably communicated to the passenger); Silvestri v. Italia Societa Per Azione Di Navigazion, 388 F.2d 11 (2d. Cir. 1968)(same). Plaintiff has not cited any support for the proposition that the reasonable communicativeness test should be applied in a situation where the relevant contractual provision relates to the pricing or fees of a carrier for a particular service.[3]

Plaintiff also contends that the terms within the Rate and Service Guides are not applicable because the parties's contract references only "UPS Service Guides" and not "Rate and Service Guides." This claim is without merit. Under the contract, plaintiff agreed to follow the terms contained in "all UPS Service Guides." Clearly, the "Rate and Service Guides" fall within this definition.

Further, the fact that the Rate and Service Guides were not provided to plaintiff is not relevant. Plaintiff admits that the guides were available on defendant's website,

---

[3]Further, the Eighth Circuit already noted that, in this case, plaintiff's remaining claim is "a four-corners claim solely between the parties that does not derive from the enactment of enforcement of state law." Data Mfg., Inc., 557 F.3d at 854. Applying the reasonable communicativeness test has the potential to go beyond the four-corners of the parties's contract and rely instead on the enforcement or enactment of state law. In such a case, the claim would be pre-empted under the FAAAA like the rest of plaintiff's claims.

but claims that plaintiff was never informed of the website address. The Court finds it hard to believe that plaintiff was unaware of, or unable to find, defendant's web address, especially when the address was present on materials provided to plaintiff on November 22, 2002. (Plaintiff's Exhibit 2, p. 6). Additionally, the fact that the fee was disclosed towards the end of a lengthy service guide is irrelevant. Each page of the document, whether at the beginning or at the end, contains terms and conditions of service to which both parties were obligated to abide. The situation here differs drastically from the cases cited by plaintiff where fine print on the back of an airline or cruise ship ticket was not reasonably communicated to the passenger. Here, the fee was disclosed in two separate sections of the service guide, including the section pertaining to third-party billing, the service used by plaintiff. It was not hidden in the midst of unrelated text.

For all these reasons, the Court concludes that the contract between the parties included a provision authorizing defendant to charge plaintiff a ten-dollar fee when third-party billing was refused by plaintiff's customers. The signed agreement clearly referred to, and incorporated the terms of all UPS Service Guides, including the "Rate and Service Guides". "[I]t is perfectly acceptable for parties to incorporate the terms of external documents, including a carrier's Service Guide, into a contract by referring to those documents." Meteor AG v. Federal Exp. Corp., 2009 WL 222329 at *5 (S.D.N.Y. 2009). Simply put, plaintiff agreed to incorporate the terms of the service guide into its contract, including the provisions governing the ten dollar "re-billing fees".[4] Because the fees were imposed pursuant to the valid contract, plaintiff's remaining claim for breach of contract must be dismissed.

---

[4] Again, to the extent that plaintiff is arguing that the fees were unconscionable or otherwise void as a matter of law, such arguments are precluded by the Eighth Circuit's opinion in this matter.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#61] is **granted**.

```
                                    _____
                                    CAROL E. JACKSON
                                    UNITED STATES DISTRICT JUDGE
```

Dated this 23rd day of October, 2009.